IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THEODORE KERRN, )
)
    Plaintiff, )
)
v. )
) 3:08-cv-0506
METROPOLITAN GOVERNMENT OF ) JUDGE HAYNES
NASHVILLE AND DAVIDSON )
COUNTY, TENNESSEE, NASHVILLE )
POLICE OFFICER JAMES JONES and )
NASHVILLE POLICE OFFICER )
BILLY SCARBERRY, )
)
    Defendants. )

## MEMORANDUM

Plaintiff, Theodore Kerrn[1], filed this action under 42 U.S.C. § 1983 against the Defendants: Metropolitan Government of Nashville Davidson County ("Metro"); James Jones and Billy Scarberry, Metro police officers. Plaintiff asserts Fourth and Fourteenth Amendment claims arising out of his arrest. Plaintiff first asserts that Jones used "excessive force" in violation of his Fourth Amendment rights by releasing his K-9 partner into a building to apprehend Plaintiff. Plaintiff also asserts a "false arrest" claim against Jones, but does not identify the officer who arrested him and took Plaintiff into custody allegedly without an arrest warrant and without probable cause. Plaintiff does allege that Scarberry signed the affidavit for Plaintiff's arrest without probable cause. As to Metro, Plaintiff alleges Metro has custom, practice or policy of failing to train adequately its canine officers so as to avoid "excessive use of

---

[1] Plaintiff's surname has alternately been spelled "Kern" or "Kerrn" during these proceedings. For the correct spelling of Plaintiff's surname, the Court has relied upon the spelling given in the text of Plaintiff's original complaint.

force" in their arrests.

Before the Court are motions to dismiss filed by the Defendants Metro, Jones and Scarberry (Docket Entry Nos. 9 and 11). The Defendants Jones and Scarberry assert that qualified immunity bars Plaintiff's damages claims. Metro contends that Plaintiff's allegations are insufficient to state a § 1983 claim against Metro. In opposition, Plaintiff asserts, in essence, that the applicable law is clearly established to overcome the individual Defendants' qualified immunity defenses and that his complaint sufficiently pleads his Section 1983 claim against Metro.

### A. Analysis of the Complaint

In early morning hours of April 15, 2007, Kerrn, who had been drinking that night, entered the Tusculum Church of Christ. (Docket Entry No. 1, Complaint at ¶¶ 1-3). Plaintiff's entry set off the church's alarm system, id. at ¶ 4, but Kerrn remained inside the church despite the burglar alarm. Id. Upon their arrival at the church, police officers were met by a church employee who told the officers that no one was supposed to be inside the church. Id. at ¶ 5. Those police officers requested that Defendant Jones, a K-9 officer, come to the church. Id.

Officer Jones arrived with his dog and entered the church. After announcing his and his dog's presence, Jones did not receive a response and released his dog to search for the "intruder." Id. at ¶ 6. The dog apprehended Plaintiff and as a result, Plaintiff was taken to the hospital for treatment of his injuries. Id. at ¶ 8. After his release from the hospital, Plaintiff was taken to the police station where an arrest affidavit was completed and Plaintiff was charged with burglary. Id. at ¶ 9.

2

## B. Conclusions of Law

First, the Fourth Amendment governs a use of excessive force claim, not the Due Process Clause of the Fourteenth Amendment. Graham v. Connor, 490 U.S. 389, 395 (1989). For those government officials who are sued in their individual capacity while performing discretionary functions, qualified immunity bars recovery of damages in a § 1983 action. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Discretionary functions involve "significant decision-making that entails personal deliberation, decision and judgment." Davis v. Holly, 835 F.2d 1175, 1178 (6th Cir. 1987). To overcome the qualified immunity defense, the Section 1983 plaintiff must show that the right was clearly established at the time of the violation. Harlow, 457 U.S. at 818 and that "the contours of [the clearly established] right...[were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Pray v. City of Sandusky, 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting Anderson). Yet, precedent is not required for all § 1983 claims to conclude that the right is clearly established. In a word, immunity from damages does not attach simply because the particular legal requirement "has never explicitly held to apply...in identical circumstances." Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985).

As to whether the individual defendants are immune from damages on Plaintiff's Fourth Amendment claim, the Court must first determine whether a constitutional violation is presented. In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth its two step approach: first, whether a constitutional violation presented and second, if so, was that right clearly established at the time of the constitutional violation. In Saucier, the Supreme Court stated:

> We have on several occasions addressed the proper analytical framework for

3

> determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity asserted in a motion for summary judgment. Qualified immunity is a defense that must be pleaded by a defendant official. Gomez v. Toledo, 446 U.S. 635 (1980); Harlow, 457 U.S. at 815. Once a defendant pleads a defense of qualified immunity, "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . . Until this threshold immunity question is resolved, discovery should not be allowed." Id. at 818.
>
> * * *
>
> In Harlow we said that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." Harlow, supra, at 818 (emphasis added). <u>A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.</u>

Id. at 231-32 (emphasis added).

In Pearson v. Callahan, __ U.S. __, 2009 WL 128768 (Jan. 21, 2009), the Supreme Court modified Saucier to allow the district court to answer either or both of these two inquiries.

> Where a decision has "been questioned by Members of the Court in later decisions and [has] defied consistent application by the lower courts," these factors weigh in favor of reconsideration. Payne, 501 U.S. at 829-830, 111 S.Ct. 2597; see also Crawford v. Washington, 541 U.S. 36, 60, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Collectively, the factors we have noted make our present reevaluation of Saucier two-step protocol appropriate.
>
> On reconsidering the procedure required in Saucier, We conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Id. at *9.

Given Sixth Circuit precedent, the appropriate inquiry here is to determine whether a right is "clearly established," for which the Court examines the decisions of the Supreme Court,

4

the Sixth Circuit, other Courts of Appeals and this Court. Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988). In addition, to determine whether an official would believe a right was clearly established, the Court utilizes an "objective reasonableness" standard, judging whether a "reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions." Lavado v. Keohane, 992 F.2d 601, 606 (6th Cir. 1993) (quoting Poe v. Haydon, 853 F.2d 418, 423 (6th Cir. 1988)); Long v. Norris, 929 F.2d 1111, 1115 (6th Cir. 1991). The "burden of proof is on the plaintiff to show that the defendant[s] [are] not entitled to qualified immunity." Armstrong v. City of Melvindale, 432 F.3d 695, 699 (6th Cir. 2006).

In Robinette v. Barnes, 854 F.2d 909, 911 (6th Cir. 1988), the Sixth Circuit addressed whether a police officer's use of his K-9 constituted excessive use of force. There, police officers were summoned to a car dealership after a dealership's burglar alarm sounded. The police officer released his K-9 partner to apprehend the suspect, and the dog ultimately apprehended the plaintiff, biting the suspect's neck in the process. The suspect later died as a result of the dog bite. The Sixth Circuit held that the mere use of the K-9 to apprehend the suspect did not pose a "substantial risk of causing death or serious bodily harm" and that, even if using a K-9 did carry with it such a risk, it was reasonable for a police officer to apprehend a burglary suspect through the use of his K-9 partner. Id. at 912-913. Robinette explained that the use of dogs in effecting arrests:

> [o]ften can help prevent officers from having to resort to, or be subjected to, [deadly] force. Any attempt to apprehend a criminal suspect presents the officer with a difficult and frightening situation, but certainly an attempt to arrest a suspect hidden inside an unfamiliar building during the nighttime presents a particularly confusing one. The use of dogs can make it more likely that the

5

officers can apprehend suspects without the risks attendant to the use of firearms in the darkness, thus, frequently enhancing the safety of the officers, bystanders and the suspect.

Id. at 914.

As to the other analysis under Saucier, the Sixth Circuit also held on whether the Fourth Amendment was violated as follows:

> We also hold that even if we were to conclude that the use of a police dog to apprehend a suspected felon constitutes deadly force, the use of force...was not unreasonable under the circumstances. The Court made it clear in Garner that the use of deadly force to apprehend a felony suspect is not per se an unreasonable seizure under the Constitution. Rather, the Court held that "[t]o determine the constitutionality of a seizure, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Garner, 471 U.S. at 8, 105 S.Ct. at 1699 (quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). Thus, the Court concluded that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Id. at 11, 105 S.Ct. at 1701.
>
> When we engage in this balancing analysis in light of the events which occurred at the Superb Motors car dealership in Nashville on July 10, 1984, we conclude that the circumstances warranted the use of deadly force. The facts indicate that Barnes had probable cause to believe that Briggs, a suspected felon [FN4] hidden inside a darkened building in the middle of the night, [FN5] threatened his safety and the safety of the other officers present. As the district court succinctly put it,
>
>> FN4. Burglary of a business establishment is a felony under Tennessee law. Tenn.Code Ann. 39-3-404, 39-1-103 (1982).
>>
>> FN5. Many jurisdictions impose more severe criminal penalties for burglaries committed during the nighttime than for burglaries committed during daylight hours. See generally 13 Am.Jur.2d Burglary §§ 27-28 (1964). Although one explanation for this phenomenon could be that at common law, an essential element of the crime of burglary was that the crime had to have been committed during the nighttime, Id. at § 22, another likely reason is the recognition by legislatures that darkness makes both citizens and police officers more vulnerable to the burglar and can

6

> heighten the criminal's opportunity for escape.
>
> a reasonably competent officer would believe that a nighttime burglary suspect, who, the officers had good reason to believe, knew the building was surrounded, who had been warned ... that a dog would be used, and who gave every indication of unwillingness to surrender, posed a threat to the safety of the officers.

Id. at 913, 914.

Plaintiff has not shown Jones's use of his dog to be dissimilar from the officer's use of his dog in Robinette. Here, Jones responded to a call from his fellow police officers after a church employee verified that the church's alarm was set off by an unauthorized "intruder" during the early morning hours of April 15, 2007. (Docket Entry No. 1, Complaint at ¶¶ 5-6). A church employee informed the officer that the person inside the church was not authorized to be there. Id. at ¶ 5. Based upon these facts, Jones entered the church with his dog to search for the "intruder," and announced his and the dog's presence without a response from Plaintiff. Jones's dog ultimately apprehended Plaintiff.

To be sure, as Plaintiff argues, the Supreme Court has noted that, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). The determinative issue is whether the officer had "fair warning that his conduct deprived [the plaintiff] of a constitutional right." Hope, 536 U.S. at 740 (internal quotations omitted). Plaintiff cites Harris v. Coweta County, Ga., 406 F.3d 1311, 1319-20 (11th Cir. 2005) (holding that it was an obvious case that a police officer may not ram his cruiser into a suspect's vehicle during a high speed chase where the suspect did not pose immediate threat of harm to the police officers or others); Craighead v. Lee, 399 F.3d 954, 962 (8th Cir. 2005) (holding that it was an obvious case that a police officer may not fire a shotgun at

7

a suspect wrestling with a victim while the victim was hold the suspect's gun over his head and pointing it upward). Yet, this Court is bound by Sixth Circuit authority.

To distinguish Robinette, Plaintiff cites the officers in Robinette as determining that a burglary was in progress and inside the building before they released their dog. Plaintiff notes that in Robinette, "by the time [the Defendant officer] arrived at the [business, a car dealership], officers already on the scene had located a point of entry, a broken glass door, and had seen a suspect inside the building looking out at them. [The Defendant officer] and another officer stated in depositions that while they were outside the building, they saw a white male inside of it." 854 F.2d at 911 (internal quotations omitted). Here, Plaintiff's allegations reflect that the officers knew an alarm inside the church had sounded and that (from a church employee) no one was authorized to be inside the church. In the Court's view, the actual location of the burglar is not a material distinction. In any event, without authorization, Plaintiff committed a burglary that Robinette identifies as a felony in Tennessee that can justify the use of a police dog.

As to his unlawful arrest claim, Plaintiff's allegation is that "one or more of the Defendant Officers...took Plaintiff into custody on April 15, 2008 [sic], there was no warrant for Plaintiff's arrest. Furthermore, Defendant Officers had no probable cause to arrest Plaintiff." (Docket Entry No. 1, Complaint at ¶ 11). Plaintiff does not describe Jones' role in his arrest, but does allege that Scarberry signed Plaintiff's arrest affidavit.

Plaintiff's arrest claim "must be pled with some degree of specificity . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008) (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987)). The § 1983 plaintiff must describe the role of each

8

defendant in the violation of his rights and how that conduct allegedly caused the constitutional violation. Dunn v. Tennessee, 697 F.2d 121, 128 (6th Cir. 1982).

Here, Plaintiff statements that "one or more of the Defendant Officers, acting in concert with the other Defendant Officers" arrested Plaintiff without probable cause does not meet this standard. Despite the Defendants' motion, Plaintiff has not sought to amend his complaint. In any event, a judicial officer issued the arrest warrant establishing probable cause for Plaintiff's arrest, and Plaintiff's allegations in his complaint also reflect probable cause for a burglary charge. This claim does not state a Fourth Amendment violation.

As to Plaintiff's claim against Metro, Plaintiff alleges a custom, policy, or practice for Metro's alleged failures to train, supervise, and discipline police officers, so that Metro permits police dogs to attack citizens unlawfully or maliciously in a manner that constitutes unreasonable and excessive force in connection with arrests.

Under Monell v. Department of Social Servs., 436 U.S. 658 (1978), a municipality may be held liable "only for the adoption of a 'policy or custom' that violates federally protected rights." Schroder v. City of Fort Thomas, 412 F.3d 724, 727 (6th Cir. 2005). Yet, there is not a specialized pleading standard for § 1983 claims against Metro. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). As a general rule, a prerequisite for municipal liability under § 1983 is that the officer's predicate acts must have violated the plaintiff's federal rights. In City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), the Supreme Court upheld the dismissal of a city and its police commission as defendants, stating that: "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." In Hancock v. Dodson, 958 F.2d

9

Case 3:08-cv-00506 Document 17 Filed 02/12/09 Page 9 of 10 PageID #: 86

1367, 1376 (6th Cir. 1992), the Court also observed that "[b]ecause the only city police officer present committed no constitutional violation, the city cannot be liable for failure to train its police officers."

Thus, with the dismissal of Plaintiff's claim against Jones, the Plaintiff's claim against Metro must fail as a matter of law. Moreover, Plaintiff does not allege any facts nor any other incidents of unjustifiable use of police dogs to identify an independent custom or policy. Plaintiff's allegations fail to state a claim against Metro.

Accordingly, the Defendants' motions to dismiss (Docket Entry Nos. 9 and 11) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ___11th___ day of February, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge